NICOLE HODGE AMEY (SBN 215157)
**THE LAW OFFICES OF NICOLE HODGE AMEY**
P.O. Box 5100
Oakland, California  94605
Telephone:  (510) 569-3666
Facsimile:  (866) 602-2986
Email:  hodgelaw@gmail.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.T. a minor, by Parent and Guardian ad Litem N.M., <br><br> Plaintiffs, <br><br> v. <br><br> ANTIOCH UNION SCHOOL DISTRICT; DOES 1-10 <br><br> Defendants. | Case No.  3:18-cv-2992 <br><br> **1ST AMENDED COMPLAINT IN SUPPORT OF APPEAL OF DECISIONS OF ADMINISTRATIVE LAW JUDGE UNDER 20 U.S.C. SECTION 1415(i)(2)** <br><br> **PETITION FOR FEES AS PREVAILING PARTY UNDER 20 U.S.C. § 1415 ("IDEA")** <br><br> **COMPLAINT FOR DISCRIMINATION BASED ON DISABILITY AND NATIONAL ORIGIN** <br><br> **DEMAND FOR JURY TRIAL** <br><br> **REQUEST FOR DISCOVERY ON ADMINISTRATIVE APPEAL** |

   NOW COMES Plaintiffs N.M., Parent and Guardian at Litem on behalf of J.T. (hereinafter "J.T." or "STUDENT"), a minor, by their attorney NICOLE HODGE AMEY, for a complaint against Defendant ANTIOCH UNIFIED SCHOOL DISTRICT (hereinafter "AUSD" or "District") and the DOES 1-10 ("DOES"), hereby alleges as follows:

   **I.**          **INTRODUCTION AND PARTIES**

   **A. Jurisdiction**

   1.    This Court has jurisdiction of Student's appeal of an administrative decision pursuant to 20 U.S.C. Section 1415(i)(2)(A) and (3).  Plaintiff J.T.'s causes of action arise under the

1

Fourteenth Amendment of the United States Constitution and 42 U.S.C. Section 1983; Title VI of the Civil Rights Acts of 1964, 42 U.S.C. Section 2000d *et seq.*; Title II of the Americans with Disabilities Act, 42 U.S.C. Section 12132 *et seq.*; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794; and the Equal Educational Opportunities Act of 1974, 20 U.S.C. Section 1703.  The Court has subject-matter jurisdiction over Plaintiffs' federal claims under U.S.C. Sections 1331, 1343.

2.      The Court has authority to award injunctive relief requested under Rule 65 of the Federal Rules of Civil Procedure.

3.      The Court has authority to award money damages under 42 U.S.C. Section 1983; Title VI of the Civil Rights Act of 1964; Title II of the Americans with Disabilities Act; and Section 504 of the Rehabilitation Act.

4.      This Court has authority to award costs and attorneys' fees under 42 U.S.C. Section 1988.

**B. Venue**

5.      Venue is proper in this Court under 28 USC § 1331, and 1391(b).

6.      All of the events that are at issue in this dispute took place within the Northern District of California.

7.      Plaintiffs reside within the Northern District of California.

8.      Defendant Antioch Unified School District is within the Northern District of California.

**C. Parties**

9.      Plaintiff J.T. is a disabled student under the Individuals with Disabilities Education Act ("IDEA") and under Section 504 of the rehabilitation act. He has 504 eligibility under Attention Deficit Hyperactivity Disorder ("ADHD") and a special education eligibility of Specific Learning Disability and Speech and Language Impairment, and is entitled to rights and remedies set forth in the Individuals with Disabilities Education Act 20 U.S.C. Section 1400 *et seq*.

10.      Plaintiff N.M. is the mother of J.T., a student with a disability.  Plaintiff J.T. is entitled to the legal rights and remedies set forth in the IDEA, 20 U.S.C. Section 1400 *et seq*.

11.      Defendant DISTRICT is a public school district authorized and existing under the laws of the State of California (hereinafter "the District") and was and is required by IDEA to provide a

free appropriate public education (hereinafter "FAPE") for J.T.  *See* 20 USC § 1401 (15) and 1415 (f)(1). AUSD is a recipient of federal funds.

12.     Defendants DOES 1-10 are adults who participated in, ordered, hid details of or allowed the discrimination against J.T.

## II.                                    BASIS OF THE APPEAL

12.     Pursuant to the IDEA, 20 USC § 1400 *et seq.* and related provisions of state law, Plaintiffs requested a state-level administrative hearing to challenge the appropriateness of the special education services provided by a local education agency.  20 USC § 1415 (b) & (f).

13.     On or about May 17, 2017, Plaintiffs filed a Due Process Complaint with the Office of Administrative Hearings (hereinafter "OAH") alleging the District had substantively and procedurally denied Student a FAPE for the 2015-2017 school year.  A true and correct copy of the Due Process Complaint is attached hereto as **Exhibit "1"** and incorporated herein by reference.

14.     Defendant filed a response to Student's Due Process, however at the start of hearing and for the first time and without notice to Plaintiff, the Defendant stated its defense was that an Individualized Education Plan ("IEP") meeting was held and the IEP document was either lost or never input into the statewide computer system called Special Education Information System ("SEIS").

15.     On December 19, 20, 21, 27, 28, 29, 2017 and January 19, 2018, this matter proceeded to hearing on Plaintiffs' Due Process Complaint before Administrative Law Judge (hereinafter "ALJ") Rita Defilippis with OAH.

16.     On February 22, 2018, the ALJ issued a written decision (hereinafter "Decision").  A true and correct copy of the Decision is attached to this complaint as **Exhibit "2"** and incorporated herein by reference.

17.     The ALJ made multiple prejudicial procedural errors, improperly conducted the state-level administrative proceeding, failed to follow the rules of evidence and California State and Federal civil rules of procedure, failed to follow her own hearing instructions, ignored relevant evidence, misunderstood relevant evidence, did not apply the law, excluded relevant evidence,

3

misstated evidence in her Decision, asked witnesses leading questions, formed an opinion at the start of hearing, misunderstand testimony, and offered her own version of events to witnesses and asked witnesses to agree with her and misapplied the law.  Therefore, the ALJ's decision should not be given any deference.

18.     Plaintiffs appeal the ALJ's Decision and seek a trial *de novo*.

19.     Plaintiffs seek reversal of the ALJ's decision in its entirety.

20.     Plaintiffs seek findings by this Court that Student was substantially and procedurally denied a Free and Appropriate Public Education during the 2014-2015 School Year.

21.     Plaintiffs seek to discover documents the District alleged existed but were withheld from Plaintiffs, and introduce evidence and testimony excluded by the ALJ.

22.     Plaintiffs seek an order requiring AUSD to provide student a fund of $45,000 for student's educational therapy, speech therapy and psychotherapy to assist with the trauma he suffered while at AUSD.

23.     Plaintiffs seek reimbursement for all legal fees incurred in connection with this action and the underlying administrative hearing.

24.     Plaintiffs have exhausted their administrative remedies.

### III.                    FACTUAL ALLEGATIONS RELATED TO APPEAL OF ADMINISTRATIVE DECISION

25.     J.T.'s birthdate is March 3, 2005.

26.     Student was enrolled in San Francisco Unified School District (hereinafter "SFUSD") prior to his family moving to the city of Antioch and enrolling in the Antioch Unified School District.

27.     J.T. entered Antioch Unified School District with an IEP dated October 21, 2014, under which he was eligible for special education under the primary eligibility category of Specific Learning Disability ("SLD") and the secondary eligibility category of Speech and Language Impairment ("SLI").

28.     J.T.'s SFUSD IEP educated him in a general education class with push-in and pull-out supports.  His IEP required him to receive Specialized Academic Instruction 1 X 240 minutes/

4

weekly pull-out and 1 X 240 minutes/weekly push-in; Individual Counseling 1 X 45 minutes/weekly; Language and Speech 1 X 60 minutes/weekly; Extended School Year ("ESY"); and transportation.

29.     On or about February 5, 2015, Parent and J.T. moved to Antioch, and J.T. was enrolled in Fremont Elementary School within the District.  The District held a 30-day IEP on February 10, 2015, and agreed to continue J.T.'s services in his then current operative IEP for an interim period, yet Parent reports J.T.'s prior IEP was not being implemented, and was not aware of much, if any services were being provided to Student.  AUSD offered Specialized Academic Instruction 1 X 240 minutes/weekly pull-out, and 1 X 240 minutes/weekly push-in; Individual Counseling 1 X 45 minutes/weekly; Language and Speech 1 X 60 minutes/weekly.

30.     At hearing, Ruth Rubalcava, the District's Special Education Director (then, Special Education Program Coordinator) and other District witnesses testified Laura Knearam (formerly Laura Albano and District Program Specialist) was present at the February 10, 2015 IEP meeting, however Ms. Knearam testified she was not present at the meeting and the signature appearing on the signature page did not belong to her.

31.     At the February 10, 2015 30-day IEP meeting, Student's resource teacher from SFUSD attended to answer questions and ensure J.T.'s transition to AUSD went smoothly and to ensure he would continue to make progress.  During this meeting the District suggested schools including a school called Kimball Elementary School which Parent could tour and select.  The District did not inform Parent or the SFUSD teacher the Kimball placement was actually a non-public school ("NPS") placement called Spectrum Center, located on the Kimball campus.

32.     Further, at the February 10, 2015 IEP meeting, AUSD staff reported J.T. had been absent on speech therapy days, however Parent reports AUSD never offered or attempted to make up therapy or make it available on different days.  Further, the District failed to provide transportation to Student as required in his 10/21/2014 IEP because the District has a policy in which it does not provide transportation to students with IEPs who attend their "home school" or students who have "academic IEPs".  Parent reports J.T. continued to further regress developmentally, socially, emotionally, academically and behaviorally.

33.     Although Student's SFUSD IEP required J.T. to be provided transportation to/from school, AUSD staff refused to provide it and instead directed Parent to the city bus.  The principal of J.T.'s school told Parent only students with physical disabilities and not attending their home school have transportation.  Parent was not given written notice that AUSD withdrew transportation or her right to appeal the removal of the related service.

34.     On or about March 9, 2015, another 30-day IEP meeting was held without Parent and without all required team members in attendance.[1]  The IEP notes state Judith Penyara (School Psychologist) was present as administrative designee, however, District's Speech and Language Pathologist witness and speech teacher testified that she had never met Judith Penyara, that Ms. Penyara was not assigned to the Fremont Elementary School which J.T. attended so she would not be present at his IEP, and further testified she had not reported her speech report for J.T. to Ms. Penyara.

35.     Parent alleged in her complaint and testified at hearing she did not attend an IEP on March 9, 2015.  Parent testified she did not have knowledge the District placed J.T. in a non-public school.  There is no IEP document documenting an IEP meeting was held in which a change of placement was discussed.  There are no assessments indicating a change of placement to a more restrictive placement at a non-public school was appropriate for J.T.

36.     On the first day of hearing, the District's attorney contended SFUSD had destroyed or lost the non-existent March 3, 2015, IEP.  The ALJ refused to allow Student a rebuttal witness to testify and introduce evidence proving documents were not destroyed by SFUSD and the documents the District purports to have existed was never in existence in SEIS.  Further, Student sought to introduce evidence and testimony to show which AUSD individuals actually logged into Student's SEIS records, establish when and what documents were added, and to prove the March 9, 2015 IEP which existed in SEIS, was a single-page document dated March 6, 2015, and *did not* change Student's placement contrary to the District's defense.  Moreover, Student sought to show J.T. was not placed in a non-public school when he returned to SFUSD, because no such IEP existed indicating he had been placed in a non-public school.

---

[1] The 30-day IEP meeting held on March 9, 2015 is dated March 6, 2015 IEP Amendment.

*J.T., et al. v. Antioch USD, et al.*          1ST AMENDED COMPLAINT

37.     The ALJ prevented Student's counsel from addressing the issue of the non-existent IEP, prevented Student's counsel from challenging the testimony of the District witnesses and instructed Student's attorney to cease addressing the issue of the non-existent IEP as the ALJ could not use or refer to a document which was not in evidence.

38.     In her written decision of February 22, 2018, the ALJ determined that an IEP document changing placement must have existed as Student's placement could not have been changed without such a document.

39.     J.T. sought relief from the Statute of Limitations as his mother was not informed J.T. was missing services and she was not informed that J.T.'s placement was changed.  Moreover, when parent expressed her concerns J.T. was struggling, only then was she informed make-up sessions for missed services would occur.

40.     The ALJ misinterpreted the law regarding relief from waiver of statutory timelines to file a complaint, which is when a parent or agency knew or should have known about the alleged action that forms the basis of the complaint.

41.     The evidence introduced proved the District's procedural safeguards did not inform Parent that she had a right to J.T.'s classroom teacher, administrator, school psychologist familiar with the child, all in attendance at an IEP.

42.     The evidence entered proved Parent followed the procedural safeguards direction, which directed her to contact the child's teacher or administrator and/or staff in the school district. Parent contacted the school site principal and the AUSD district administrator and neither person informed her of her right to file due process or the necessity of filing.

43.     Further, the evidence entered proved an IEP changing student's placement and removing his services did not exist and never existed; thus, establishing Parent did not have knowledge the District changed student's services, his placement, and his accommodations.

44.     The District willfully withheld records from Student pursuant to Student's December 2015 records request.  Moreover, the ALJ prohibited Student from introducing the written request for records and supporting testimony to show which records were actually received.

45.     From February 5, 2015, until July 2015, the District failed to provide J.T. with

Specialized Academic Instruction 1 X 240 minutes/weekly pull-out, and 1 X 240 minutes/weekly push-in; Individual Counseling 1 X 45 minutes/weekly; Language and Speech 1 X 60 minutes/ weekly.

46.     J.T. disenrolled from AUSD in July 2015 and the District did not provide the March 9, 2015 IEP change of placement IEP it alleged existed and in fact never produced it.  Parent and her counsel only discovered at hearing J.T. had been moved to a non-public school which was located on a public school campus, while attending AUSD.

47.     The District purports to have convened an IEP on March 9, 2015.  Parent was not present, neither was all necessary team members or a school psychologist present who was familiar with J.T. and able to discuss change of placement with the staff.

48.     The District failed to refer J.T. to mental health counseling and it failed to ensure he received mental health and/or individual counseling.

49.     At hearing, the ALJ permitted AUSD to introduce testimony regarding an IEP that was not produced and did not exist, and prohibited Student's counsel from raising issues related to the IEP the District purports to have existed.  It was not until the first day of hearing both Student and his counsel first learned of the alleged IEP changing placement.  Further, the District never produced the alleged March 2015 IEP, which District purports changed J.T.'s placement from general education to a non-public school.

50.     Student had no cause to reasonably anticipate the District would raise a defense by alleging the existence of a missing March 2015 IEP document.

IV.                     **FACTUAL ALLEGATIONS RELATING TO**
                        **RACIAL DISCRIMINATION AND SEGREGATION**

51.     Plaintiffs reallege and incorporate herein by reference paragraphs 9 through 50 of this Complaint as though fully set forth herein.

52.     Plaintiff N.M. is an African American woman and the mother of J.T., who is an African-American male.  N.M. has standing to bring this complaint on J.T.'s behalf.

53.     Plaintiffs seek declaratory and injunctive relief as well as monetary damages.

54.     Plaintiffs seeks to put an end to unlawful racial discrimination he suffered while attending Antioch Unified School District.

8

55.     AUSD and other school districts within California have used special day classes focused on behavior, for students alleged to exhibit maladaptive behaviors and who are identified as emotionally disturbed as dumping grounds for African American students, removing them from its mainstream schools and sending them to behavioral programs and schools in disproportionate numbers and without cause or justification, neglecting their educational needs, including learning disabilities while in these programs.

56.     Further, these programs have the impact of directing students into jail and prison, feeding the "school-to-prison pipeline" as these programs do not focus on academic subjects and do not attempt to improve the reading, language or math abilities of students.

57.     Thus, Defendants Antioch Unified School District and the California Department of Education unlawfully discriminate on the basis of race by using subjective criteria to place students in classes created for emotionally disturbed students, using racial bias of teachers and district assessors to determine African American students are emotionally disturbed instead of on the Autism spectrum, and using the racial bias of teachers to identify cultural differences as emotionally disturbed or as negative behaviors, holding African-American students in behavioral programs or non-public schools for emotionally disturbed students and ignoring the child is learning maladaptive behaviors from staff by the manner in which African American students are treated upon entry into these behavior programs.

58.     African American students who display non-compliant or non-dangerous behaviors are seen as emotionally-disturbed rather than as a student with a learning disability or Autism Spectrum Disorder.

59.     AUSD segregates its students of Black African descent into behavioral programs and programs for emotional disturbed children when the students of Black African descent do not exhibit maladaptive behaviors but require a higher level of academic support.

60.     J.T. was placed in a non-public school designed for students with emotional disturbances and behavior problems, because his SFUSD IEP required him to have Specialized Academic Instruction 1 X 240 minutes/weekly pull-out, and 1 X 240 minutes/weekly push-in; Individual Counseling 1 X 45 minutes/weekly; Language and Speech 1 X 60 minutes/weekly.

9

61.     J.T.'s mother was never notified he was being placed in a non-public school program for students with behaviors and emotional disturbance and/or a more restrictive placement than the general education program he was in at SFUSD.  J.T. entered into the non-public school program and although the District staff could only identify behaviors such as breathing heavily when frustrated by academic tasks and dropping papers onto the floor, the District determined without assessments J.T. should be placed at the Spectrum Non-Public School.

62.     J.T. did not have any documented behavior issues at AUSD, the staff of the non-public school simply assumed he had behaviors because he was placed in their program.

63.     J.T. was subject to physical abuse, physical restraint, verbal put downs and a denial of education and academic instruction as the classroom focused on behaviors of the children instead of academic learning, which was the basis of J.T.'s eligibility for special education.

64.     Parent attempted to testify about the regression J.T. suffered while at AUSD, however the ALJ refused to allow Parent to testify about her knowledge of regression suffered by J.T. and stated Parent did not have the knowledge to explain what professionals had written in J.T.'s IEP at SFUSD.

**A.  Racial Disparities in the Antioch Unified School District.**

65.     Plaintiffs reallege and incorporate herein by reference paragraphs 9 through 64 of this Complaint as though fully set forth herein.

66.     Antioch Unified School District entered into a consent decree with the East County National Association for the Advancement of Colored People ("NAACP") in 2015, agreeing to reduce its suspensions and expulsions of African American males who were in special education.

67.     Shortly after entering this agreement, AUSD entered into an agreement with Spectrum Non-Public School ("NPS") to place a non-public school serving emotionally disturbed students of multiple grades inside of a District campus.

68.     Within days of J.T.'s enrollment in AUSD, the District held an IEP meeting and offered a placement at Kimball Elementary School.  At no time did AUSD inform Parent that J.T. would actually be attending Spectrum NPS, which was located on a AUSD public school campus.

J.T., et al. v. Antioch USD, et al.                    1ST AMENDED COMPLAINT

69.     Upon information and belief Plaintiffs allege AUSD assigned Black boys such as J.T. to the Spectrum Placement without regard to his needs, and to avoid training its teachers to identify and avoid unconscious bias.

70.     When the District entered into the agreement with East County NAACP it began assigning Black male students such as J.T. to behavior-based programs such as Spectrum NPS to

give a false representation it was not discriminating against African-Am erican students.

71.     The program J.T. was placed in at Spectrum NPS at Kimball contained a high majority of African American boys who were subject to physical abuse, harassment and put downs, and no instruction and sporadic undocumented special education services.

72.     At some time in the summer of 2015, Parent notified Ruth Rubalcava her child was verbally and physically abused.  Ms. Rubalcava informed Parent all Spectrum staff would be fired giving Parent a false understanding, the firing of the staff was due to the allegations of abuse, however the agreement with Spectrum was concluding.  Parent was never informed the agreement with Spectrum was concluding.

73.     The Spectrum at Kimball NPS program was ended on or about July 2015, and then was proceeded by Tobinworld, a non-public school which closed due to further abuse of students.  In 2017, after the closure of the non-public school tucked-away on a public school campus, and after the dramatic decline in suspensions, the suspensions were reported to have increased up to 16%.

74.     Parent was not aware the District was warehousing African-American male students with disabilities, in a non-public school on a public school campus designed specifically to hold African-American male students with disabilities.

75.     J.T. did not have any recorded behavioral incidents during his time at his comprehensive public elementary school.  Parent did not receive any notices that J.T. was exhibiting disruptive, dangerous or maladaptive behaviors or displayed any behavioral issues which would suggest he required a more restrictive placement a non-public school designed for students with disruptive, dangerous or maladaptive behaviors.

76.     J.T. was eligible for services under SLD and SLI.  He required specialized academic instruction and services to address his speech impairment and was placed in a behavior program, which denied him academic services and supports, and the speech he needed to access his education and overcome his language and learning deficits.

77.     The racially driven biases of the District caused it to view J.T.'s speech and language deficits and breathing heavily as maladaptive.

78.     J.T. had been identified as emotionally disturbed while a student in San Francisco Unified, and had made such significant progress and learned coping skills, such as breathing, that in November 2014, he no longer qualified as emotionally disturbed.

79.     J.T. suffered significant and lasting trauma from the events he suffered while at AUSD. J.T. witnessed staff physically and verbally abusing students, while being subject to physical abuse himself.  J.T.'s mother fled San Francisco and relocated within the boundaries of AUSD to escape domestic violence only to have J.T. victimized by AUSD in his school setting, an environment where he had previously felt safe.

80.     J.T.'s mother returned to San Francisco to end the school place violence J.T. was being subjected to while in the AUSD.

81.     J.T. still suffers from the trauma he suffered while in the AUSD.

**B. J.T.'s Unlawful Placement at Spectrum Non-Public School.**

82.     Plaintiffs reallege and incorporate herein by reference paragraphs 9 through 81 of this Complaint as though fully set forth herein.

83.     The IDEA requires a student's IEP, detail the student's special-educational needs and describe how the district will meet those needs, may remain in his or her mainstream school and receive IEP services.  Merely having an IEP is not sufficient reason for AUSD to remove J.T. from his mainstream class and place him in an NPS such as Spectrum, without notice and consent of Parent.

84.     At the administrative hearing, the District staff testified the resource specialist did not give students at Fremont Elementary School as many service minutes as was J.T.'s SFUSD 10/21/2014 IEP required.  The IDEA requires IEPs to be individualized, however AUSD had

policies in place which were determined by the availability of its staff and not the needs of the student.

85.     Parent continues to have a need to return to AUSD which provides for more affordable living and allows her to remain safe from the risk of domestic violence which exists in San Francisco, however due to the policies AUSD has in place and its refusal to serve J.T. in the mainstream program, the abuse he is subject to at the behavioral programs at AUSD, N.M. is unable to return to Antioch and AUSD.

## V.                         PROCEDURAL ERRORS BY ALJ

86.     Denial of rebuttal witnesses/giving deference to District's witnesses;

87.     Allowing a defense plaintiff had not been given notice of;

88.     Testifying for witnesses and attempting to rehabilitate witnesses;

89.     Giving deference to District's attorney; prohibiting Student's counsel's right to object;

90.     Failure to properly apply statute of limitations waiver to facts;

91.     Ordering petitioner's counsel to call witnesses in the order preferred by District's counsel.

## VI.                    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Denial of a Free and Appropriate Public Education During the 2014-2015 School Year.

92.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 91 of this Complaint as though fully set forth herein.

**A.  AUSD Failed to Deliver and Implement Services According to the IEP During the 2014-2015 School Year.**

93.     AUSD failed to implement, provide and/or deliver the services identified in J.T.'s SFUSD IEP.  The Antioch Unified School District did not create an IEP to change or terminate the services and supports agreed to in J.T.'s October 21, 2014 SFUSD IEP, amended on November 20, 2014, and adopted by AUSD on February10, 2015, thus, the services agreed to in J.T.'s SFUSD IEP were required to be implemented.

13

94.     AUSD failed to implement, provide and/or deliver the services it offered in its, 3/6/15 IEP and notes of services offered dated 2/10/15.  J.T.'s 2/10/2015 IEP clearly states he is to receive Specialized Academic Instruction 1 X 240 minutes/weekly pull-out, and 1 X 240 minutes/weekly push-in; Individual Counseling 1 X 45 minutes/weekly; Language and Speech 1 X 60 minutes/weekly. Parent alleges AUSD failed to provide all J.T.'s services AUSD is purporting to have provided. According to Parent between on or about February 2015, through June 2015, and J.T.'s 3/6/2015 and notes of service offered from AUSD on 2/10/2015 IEP J.T. missed approximately 96 hours of Specialized Academic Instruction Services, nine (9) hours of Individual Counseling, and 11 hours of Language and Speech for a total of 116 hours missed.

95.     AUSD's July 14, 2015 IEP Amendment is a clear representation and acknowledgement by AUSD of services missed and their failure to implement J.T.'s IEP.

96.     During hearing, the District did not deny it failed to deliver J.T.'s IEP services and did not deny it did not follow his IEP.  AUSD simply blamed J.T. for the District staff failing to pull him from class to receive services and for being absent when J.T. was not receiving transportation to/from school as written in his IEP.

97.     The District failed to provide transportation to J.T. and blamed him for being absent and missing services.  The Fremont Elementary School Principal Heather Ogden testified Parent requested transportation and explained to Ms. Ogden, her difficulty in getting J.T. to school.  In response, Ms. Ogden informed Parent AUSD did not provide transportation to students attending their home school.  Ms. Ogden then directed Parent where to catch a city bus.  Ms. Ogden subsequently shared her conversation with Fremont School Psychologist, Paola Colosimo who also in turn, failed to inform the District it needed to provide transportation pursuant to J.T.'s 10/21/2014 IEP.

98.     Student's SFUSD IEP required District staff to provide Parent with weekly progress reports for J.T.  Jennifer Corning, AUSD Resource Teacher testified she did not update Parent on J.T.'s progress as students in AUSD only received IEP progress reports during the report card period.  J.T.'s IEP required the District to communicate with his mother weekly.  Parent did attempt to make contact with the District, however the emails in evidence show AUSD staff

believed parent had too high expectations for J.T.  Aaron Lasley, J.T.'s former Spectrum Teacher, and all other service providers failed to communicate with Parent or provide her with weekly updates on J.T.'s progress.  Instead, the District exchanged emails accusing parent of having too great of expectations.

**B. AUSD Failed to Have <u>All</u> Required Team Members Present at IEP Meetings.**

99.    A member of the IEP team is not required to attend an IEP team meeting, in whole or in part, if the parents and school district agree that the attendance of such a member is not necessary because the member's area of the curriculum or related services is not being modified or discussed in the meeting.  (20 U.S.C. § 1414(d)(1) (C)(i).)  A member of the IEP team may be excused from attending an IEP team meeting, in whole or in part, when the meeting involves a modification to or discussion of the member's area of the curriculum or related service if (i) the parent and the school district consent to the excusal, (ii) the member submits written input to the team prior to the meeting for development of the IEP, and (iii) the consent is in writing. (20 U.S.C. § 1414(d)(1)(C)(ii) and (iii).)

100.    These procedures are slightly different.  An "agreement" to excuse a team member refers to an understanding between the parent and the district.  (71 Fed. Reg. 46,673 (Aug. 14, 2006).)  The requirements for "consent" are more stringent, requiring the school district to fully inform the parent of all information relevant to the team member's excusal, in the parent's native language or other mode of communication, and to ensure that the parent's understanding that the granting of consent to the team member's absence is voluntary and can be revoked at any time.  (71 Fed. Reg. 46,674 (Aug. 14, 2006); see also *Letter to Finch* (OSEP 2012) 59 IDELR 15.

101.    AUSD did not provide Parent with an excusal form which would have given her notice she had a right to require the team members to be present.

1)  **AUSD's Failure to Have a General Education Teacher or an Administrative Designee Present at the 2/10/2015 IEP Meeting.**

102.    The District did not produce J.T.'s general education teacher at student's 2/10/2015 IEP meeting.  The school principal testified J.T.'s teacher would have known J.T. better than she did at the 2/10/2015 IEP meeting.  District staff stated the teacher in attendance was a substitute, however J.T.'s Fremont Elementary School General Education Teacher Amanda Freitas

15

(formerly known as Amanda Boet), testified she had taken over J.T.'s class in October 2014, was given a contract and became the per permanent teacher in in January 2015, prior to J.T.'s enrollment into AUSD.

103.     The District did not produce an administrative designee who could provide answers about placement and services available.  Parent was denied meaningful participation because she had no knowledge of the programs being offered or the alternatives to those non-general education programs. Ruth Rubalcava stated the 2/10/2015 IEP was signed by Laura Albano as administrative designee.  Ms. Albano (not Ms. Knearam) testified she was not invited and did not attend the 2/10/2015 IEP.  Ms. Rubalcava also testified she did not attend.  There was no administrator at the meeting.

2)  **AUSD failure to Have Student's General Education Teacher, School Psychologist and Spectrum Teacher Present at the March 2015 IEP.**

104.     The District did not produce J.T.'s general education teacher, a school psychologist who had reviewed his past assessments, or a teacher from Spectrum Non-Public School.  Ms. Penyera attended the March 9, 2015 IEP as administrative designee and testified she had not reviewed J.T.'s assessments prior to the IEP.  Both J.T.'s general education teacher and a Spectrum teacher was not present.  Moreover, Parent was not present or invited.  Parent was not given an opportunity to discuss least restrictive placement options, she was not able to ask a school psychologist or the Spectrum Teacher how the Spectrum program would meet J.T.'s than the general education program or what he would be losing or gaining from the change.  The teachers were not available to participate and express how J.T. was doing in class or how the new class structure could serve him.  Parent was not invited, and as such did not attend was unable to discover Student's operative IEP from SFUSD could not be implemented at Spectrum at Kimball.  There were no assessments to indicate the non-public school behavior-based program was appropriate for J.T.

3)  **AUSD's failure to have a General Education Teacher present at the May 1, 2015 or May 8, 2015 IEP Meetings.**

105.     Aaron Lasley testified the team discussed J.T.'s participation in general education during the May 2015 IEP.  (D-10)  IEP notes prove there was no discussion of Student's needs and the

16

IEP was called to address an incident which had occurred at school and resulted in staff having a physical altercation with Student.  A general education teacher was not present to participate in the discussion or participate in the discussion about J.T.'s general education classroom needs. Parent was denied meaningful participation because a general education discussion could not be fully had without input from a general education teacher.  The ALJ would not allow Student's counsel to ask details about the incident or introduce the incident report of J.T.'s assault by staff; thus, Student was denied the opportunity to introduce evidence regarding how the incident resulted from the AUSD's failure to implement Student's IEP, as well as its inability to meet his needs in an environment where his peers were having behavioral crises which required police participation.

### 4)  AUSD's Failure to Have Student's Special Education Teacher and Aides Present at the July 2015 IEP Meeting.

106.     AUSD failed to produce Spectrum staff at a July 14, 2015 IEP meeting, which parent called to discuss her concerns about the classroom and abuse by staff in the classroom.  Ms. Rubalcava testified Parent had requested staff not be present, however Parent testified she specifically requested staff be present and the Program Director for Spectrum NPS, Danielle Patterson testified Parent had expressed she wanted to ask staff questions at the IEP meeting. The willful exclusion of staff specifically denied Parent meaningful participation in the IEP creation process and denied Parent the opportunity to discover what occurred during the incident. AUSD offered Parent Tobinworld and led Parent to believe her concerns had been heard. Danielle Patterson testified Spectrum at Kimball was going to close and Tobinworld would take over the location.  AUSD willfully mislead Parent that staff who had harmed her son were being fired and the District had to give Student a new placement, when in actuality, Spectrum at Kimball was closing.

### C.  AUSD's Failure to Establish and Maintain Procedural Safeguards.

107.     Under the IDEA a local education must establish and maintain procedural safeguards to ensure parents of children with disabilities and their parents are guaranteed procedural safeguards.  (20 U.S.C. §1415(a)).

17

108.    The District's Notice to Parent failed to inform her she had a right to have a general education teacher, administrative designee, school psychologists or other service providers at the interim and subsequent IEPs.

109.    The procedural safeguards did not notify Parent AUSD was required to obtain her consent to excuse team members.  The procedural safeguards instructed Parent to take her concerns to the teacher or the administrator.  Parent followed the procedural safeguards, which she understood and brought her concerns and disputes about services to the principal, the resource teacher and to Ruth Rubalcava who was a special education coordinator during this time period.  None of the staff informed Parent of the due process requirements or the time limitations.

110.    Parent was not given prior written notice prior to the District unilateral predetermining a change in Student's placement or removing his services and at all times relevant herein this complaint, Parent was unaware AUSD moved Student to a non-public school campus tucked away on a public school campus.  Further, Parent was unaware Student was not receiving his push-in and pull-out academic services in the general education environment once he moved to Spectrum NPS and while at Fremont.

111.    It was not until the administrative hearing in this matter, Parent and Student's counsel heard AUSD allege it had created or attempted to create an IEP document which had been lost or destroyed.  J.T.'s complaint indicated an IEP had been held on March 3, 2015, without Parent. Parent did not discover until hearing the District had unilaterally and covertly changed J.T.'s placement to an NPS and the District was claiming it changed student's placement pursuant to the lost or missing IEP.

112.    J.T. was not allowed to call witnesses from SFUSD to testify it had never received an IEP showing a change of placement from general education to an NPS and Student was not allowed to present the SEIS records showing no details regarding a placement change had been entered into SEIS.

//

//

18

113.     Plaintiffs seek a judicial Order affirming J.T. was improperly placed at Spectrum NPS and a monetary fund for his counseling and academic therapy be required from months of being denied academic and related services and abuse resulting in emotional trauma.

**D.   AUSD's Failure to Provide a Clear and Specific Offer of Services and Placement.**

114.     The Local Education Agency must develop an IEP for student.  20 U.S.C. §1414(d)(3).)

115.     The IEP must include a statement of the child's present levels of academic achievement and functional performance, including—how the child's disability affects the child's involvement and progress in the general education curriculum; a statement of measurable annual goals, including academic and functional goals, designed to—meet the child's needs that result from the child's disability to enable the child to be involved in and make progress in the general education curriculum; and meet each of the child's other educational needs that result from the child's disability; a description of how the child's progress toward meeting the annual goals described  and when will be measured and when periodic reports on the progress the child is making toward meeting the annual goals (such as through the use of quarterly or other periodic reports, concurrent with the issuance of report cards) will be provided; a statement of the special education and related services and supplementary aids and services, based on peer-reviewed research to the extent practicable, to be provided to the child, or on behalf of the child, and a statement of the program modifications or supports for school personnel that will be provided for the child—to advance appropriately toward attaining the annual goals; to be involved in and make progress in the general education curriculum and to participate in extracurricular and other nonacademic activities; and to be educated and participate with other children with disabilities and nondisabled children in the activities described in this subparagraph; an explanation of the extent, if any, to which the child will not participate with nondisabled children in the regular class and in activities; the projected date for the beginning of the services and modifications described in subclause (IV), and the anticipated frequency, location, and duration of those services and modifications; and(20 U.S.C. § 1414 (d) (1) (i)(I)-(VII).

116.    AUSD changed J.T.'s placement, but did not develop new goals or eliminate goals for the changed placement (testimony of J. Penyera), it did not create present levels of performance (testimony of J. Corning), nor did it develop a statement of the special education services to be provided, the location or the frequency.  The District did not inform Parent her child would no longer participate in a program with non-disabled children.  The District failed to comply with the mid-year transfer mandate of 20 U.S.C. § 1414(d)(2)(A).  The IEP of March 2015 failed to inform Parent the push-in and pull-out services in the general education environment would cease.  AUSD failed to inform Parent the 10/21/2014 general education IEP and amended on 11/20/2014 could not be implemented at a non-public school.

**E.  AUSD Willfully Withheld, Misrepresented and Falsified Student Records.**

117.    The IDEA **mandates** districts to establish procedural safeguards that provide "[a]n opportunity for the parents of a child with a disability to examine all records relating to such child."  20 U.S.C. § 1415 b)(1)(A).  Examination of records by parents is critical to the development of an IEP.  *Amanda J. ex rel.*; *Annette J. v. Clark Cnty. Sch. Dist.*, 267 F.3d 877, 892 (9th Cir. 2001).  By mandating parental participation and requiring that parents have full access to their child's records, Congress sought to ensure that the interests of the individual children were protected."  (citing *Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 208 (1982).

118.    Student made a written request for records from the District on or about December 2015.  The District did not produce the March 2015 IEP it alleged had been drafted, nor did the District inform parent that pages were missing from the one page March 2015 IEP that it sent to student.  The District's failure to produce the IEP resulted in an inability of parent to form her complaint and know all of the facts that existed and the failures suffered by J.T.

119.    At hearing, Student's counsel asked the ALJ to order the District to produce its SEIS records to prove what IEP had been inputted in the system on March 9, 2015 and the staff person who entered the document.  The ALJ believed Student had failed in her duty to subpoena records, and refused to order the District to produce the data.  The ALJ was not familiar with state law requiring the District to produce all records pursuant to a written records request.

Student's counsel and Parent did not know the District would claim an IEP had been created but destroyed by SFUSD could not subpoena.

120.     The ALJ further rejected student's request to introduce the December 2015 written request for records and testimony on what had been received to rebut the District's claim that it had held an IEP that discussed placement change and to show that the District withheld records from student.

121.     AUSD's May 1, 2015, Offer of FAPE page included an Offer of FAPE page which differed from Student's Exhibit 10.  The District's May 1, 2015 Offer of FAPE page backdates Specialized Academic Instruction to begin on March 6, 2015.  The IEP notes in D-10 clearly prove placement was not discussed, a discussion of a change to J.T.'s services was not discussed and yet the District added an Offer of FAPE page dated 5/1/2015 purported to change services. There is no indication from IEP notes an Offer of FAPE was discussed or agreed to by Parent. There are no IEP notices or prior written notices within the Student's records to show Parent was ever given notice of the District's plan to either change placement or remove push-in and pull-out services.

122.     The records and notes make it clear the District's Offer of FAPE was not discussed at the May 2015 IEP and was not agreed to by the Parent as she was not informed that such an offer page existed.  The July 14, 2015, IEP contained two Offer of FAPE pages, and neither match the page in the exhibits produced by AUSD.  The District failed to make a clear Offer of FAPE and Parent and her attorney were forced to go to hearing to discover the facts.  Further, the District attempted to back date a May 1, 2015, IEP to cover its failure to hold a placement IEP prior to changing Student's placement.  Moreover, Danielle Patterson, Spectrum Program Director, testified the March 6, 2015, IEP document, the same document which AUSD purports to have been the IEP meeting where J.T.'s change of placement was made, would not have been enough to place J.T. at Spectrum at Kimball, non-public school.

123.     Throughout hearing AUSD repeatedly introduced educational records which had not previously been produced to Student including attendance records from Kimball Elementary

School and Fremont Elementary School, transportation records, signature pages for a 2/10/2015 Interim Placement IEP meeting, all of which had not been produced in AUSD's exhibit binder prior to hearing.  The District produced the 2/10/2015 signature page days before hearing, and falsely claimed Laura Albano (now Laura Knearam) was in attendance at a 2/10/2015 IEP. Student requested to call a handwriting expert and the request was denied.  Student was able to locate Laura Albano who testified she had not attended any IEP's for J.T. and the signature was not hers nor was it a good rendition of her signature.

**F.   The District Denied Parent's Right to Informed Consent and Pre-Determined J.T.'s Placement.**

124.    Under the IDEA, parents have the right to informed consent. 20 U.S.C. § 1414(a)(1)(D). Consent means that the parent has been fully informed of all information relevant to the activity for which consent is sought. 34 C.F.R. § 300.9(a).  The District had Parent sign an IEP dated March 6, 2015, and now contends the IEP was Parent's consent to a change of placement. The March 9, 2015, IEP did not contain details to notify parent that her signature would result in a change of placement, the termination of student's services being provided within a general education environment and the termination of his 240 minutes of weekly push in Specialized Academic Instruction and 240 minutes of weekly pull-out services.

125.    Antioch failed to develop an IEP which included a statement of the special education and other services to be provided.  Without specific IEP detail, Parent had no way of knowing placement at Kimball was Spectrum, a non-public school and J.T.'s general education supports and socialization with general education peers would end.

126.    The IDEA places the burden upon the District to make Parent aware of the continuum of placement options.  There is no law which requires the Parent to know the different types of placement and be able to look at a placement and know the type of placement being offered.  The AUSD 2/10/2015 IEP refers to Kimball, along with Fremont and Lone Tree Elementary Schools, but does not provide notice to Parent or her counsel that Spectrum a non-public school located on a public school campus was being offered.  Student's special education teacher from SFUSD attended the 2/10/15 IEP and would have been familiar and known Spectrum was a change of placement.  The District kept the nature of the placement hidden from Parent and the

22

professionals supporting her.  The March 6, 2015, IEP document does not refer to any location. The law requires the District to give Parent written notice of the placement change, it requires the District to engage in an IEP process in which Parent participates and is provided the details of a child's IEP to have informed consent.

127.    The District produced emails dated March 3, 2015, sent between Judith Peneyra and Ruth Rubalcava.  The emails indicate AUSD had no intent to allow Student the option to remain at his home school Fremont Elementary in general education and no intent to give Parent notice of the change of placement.  Judith Peneyra writes that Gaby stated J.T. could start on 3/11/2015, she then asks "do we need an IEP?" "can we move this forward?"

128.    Student raised the issue of pre-determination of placement, however the ALJ denied Student the opportunity to address the issue at hearing, as the pre-hearing conferring held by a different ALJ, student's counsel indicated there was no placement change to discuss.  The District pre-determined Student's placement and Parent was not given the details or documents to understand the placement her child was sent to.  Student's due process complaint alleged the District attempted to change J.T.'s placement on May 1, 2015 to Tobinworld, another Non-Public School.  Plaintiff and her counsel were unaware Student had been placed in Spectrum Non-Public School as the documents indicated J.T. attended Fremont and later Kimball Elementary Schools.

129.    Further, the ALJ did not allow Parent to raise the FAPE violations which flowed from the March 2015 IEP and which the District claimed was missing.  Parent seeks relief on the issues of pre-determination and lack of informed consent, as the District was allowed to introduce testimony on the issue and introduce testimony about an IEP which was never given to Student and not presented at hearing.

130.    Plaintiffs seek an Order determining Parent was denied informed consent and pre-determined placement.

**G. Parent was Denied Meaningful Participation.**

131.    The District changed J.T.'s placement without Parent present and without a school psychologist present who could address the meaning of his assessments and how the assessments

supported placement in a highly restrictive non-public setting and the impact of the a placement on J.T.  The District changed J.T.'s placement without the presence of his general education teacher to address how he was performing in the general education class and without the presence of the teacher from the non-public school to address how J.T. would benefit or be harmed by the placement.  The District changed J.T.'s placement without Parent's participation and without her present at the IEP meeting.

132.     The District's conduct in failing to provide parent with notice of change of placement necessitates a waiver of the statute of limitations, as parent did not become aware that J.T. was in a non-public school until hearing when the witnesses announced that the class J.T. was in a Kimball elementary was run by Spectrum Non-Public School.

133.     The District failed to document any services, it failed to clearly document other services, it destroyed time sheets and records despite student making a request for records in December 2015 and it denied parent the information to determine what services J.T. received and the services he was denied.

134.     Plaintiffs' therefore seek an Order requiring the District to develop procedures for documenting and informing parents of the services students receive and ensure parents have meaningful participation.

**H. The District Failed to Give Parent Written Notice of a Change in Placement.**

135.     AUSD changed Student's placement without giving notice to parent, without an IEP and willfully and unlawfully inserted Offers of FAPE into IEPs despite the IEPs showing an Offer of FAPE had not been discussed at the May 2015 and July 2015 IEPs.

**I.  The District Failed to Provide J.T. with an Appropriate Placement.**

136.     At hearing, the ALJ allowed the District to testify to the appropriateness of J.T.'s placement, Student was not allowed to address the issue of the appropriateness of placement or argue the issue in Student's brief.

137.     AUSD placed J.T. in a non-public school without assessments, without a general education teacher, special education teacher, and without a school psychologist who had reviewed records and without Parent.

24

138.    J.T. regressed in the non-public school program academically, socially, emotionally and behaviorally.  The placement was not appropriate for him and there was nothing in his assessments which indicated he could benefit from placement in a non-public school with a behavioral focus.  There was nothing occurring in his general education environment which indicated to the staff that J.T. needed a highly restrictive non-public school setting, where teachers and staff could perform physical abuse and restraints on students.

139.    J.T. was placed in the non-public school based on his race and because his IEP offered him more services than the special education staff at Fremont Elementary were willing to provide.

**SECOND CLAIM**
**Attorneys' Fees**

140.    Plaintiffs incorporate by reference paragraphs 1 through 139 of this Complaint as though fully set forth herein.

141.    The IDEA provides for an award of reasonable attorneys' fees and related costs to the parent of a child with a disability who is the prevailing party in any action or proceeding. 20 USC  § 1415(i)(3)(B).

142.    Plaintiffs believe that they will be successful herein and therefore entitled to an award of their attorney fees, expert fees and related costs as the prevailing parties at both the administrative proceeding and in this and any subsequent Court.  The amount of such fees and expenses cannot yet be determined because they are ongoing.

143.    Under the IDEA, this Court has the discretion to award the prevailing party reasonable attorney's fees. 20 U.S.C. § 1415(i)(3).  "[P]laintiffs' may be considered 'prevailing parties' for attorney[s'] fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1933).

144.    Plaintiff seeks a ruling that he is entitled to have the District cover the expenses AND fees incurred in the underlying administrative proceeding and appeal.

**THIRD CLAIM**
**Violation of the Equal Protection Clause of the Fourteenth**
**Amendment to the United States Constitution 42 U.S.C. Section 1983.**

145.   Plaintiffs incorporates the preceding paragraphs of this Compliant as if set forth fully herein.

146.   42 U.S.C. Section 1983 of the Civil Rights Act of 1964 ("Section 1983") forbids state actors from depriving individuals of rights secreted by the Constitution of the United States of America.

147.   DOES 1-10 are state actors within the meaning of Section 1983.

148.   DOES 1-10 have violated Plaintiffs' rights as secured by Section 1983 by acting under color of law, intentionally, willfully, and with deliberate indifference to deprive Plaintiffs of rights and privileges secure and protected by the Constitution and laws of the United States.

149.   Specifically, DOES 1-10 assigned J.T. along with other African American male special education students, to a non-public school, kept him there and treated him in a racially discriminatory manner; thus, depriving them of their right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution.

**FOURTH CLAIM**
**Violation of Title VI of the Civil Rights Act of 1964**
**42 U.S.C. Section 2000d *et seq.***

150.   Plaintiffs incorporate by reference paragraphs 1-149 of this Compliant as though fully set forth herein.

151.   Title VI of the Civil Rights Act of 1964 Prohibits discrimination, exclusion from participation, and denial of benefits based on race, color, or national origin in programs or activities receiving federal financial assistance.  42 U.S.C. 2000d.

152.   AUSD receives federal funding.

153.   The individual plaintiffs are members of a protected class, specifically, they are African American.

154.   J.T. was at the time relevant to this action, qualified to continue the pursuit of his education.

155.   J.T. is an intended beneficiary of the federal funds provided to AUSD.

156.     AUSD makes decisions concerning educational placements and services it provides on the basis of racial prejudices and stereotypes, and such decisions operated to deprive J.T. of the educational services and benefits to which he is entitled by law and which he needs to become a productive citizen.

157.     Specifically, Defendant maliciously, negligently and willfully discriminated intentionally against J.T. and violated Title VI by:

(a)   Denying J.T. the benefits of education in the general education classes or access to the general education curriculum, in violation of 42 U.S.C. Section 2000d and 34 C.F.R. Section 100.3(b)(i);

(b)   Providing J.T. educational services that are different from those provided to his peers of different races, including Caucasians in violation of 42 U.S.C. Section 2000d and 34 C.F.R. Section 100.3(b)(ii);

(c)   Subjecting J.T. to segregation and separate treatment in the receipt of services and educational benefits that Defendant provides in violation of 42 U.S.C. Section 2000d and 34 C.F.R. Section 100.3(b)(iii);

(d)   Restricting J.T. in the enjoyment of the advantages and privileges provided to his Caucasian and non-African American peers in violation of, 42 U.S.C. Section 2000d and 34 C.F.R. Section 100.3(b)(vi); and

(e)   Treating J.T. and his mother differently from their Caucasian peers in determining whether to satisfy admission, enrollment, quota, eligibility, members, or other requirement or condition for receiving the benefits of Defendant's educational programs in violation of 42 U.S.C. Section 200d and 34 C.F.R. Section 100.3(b)(v).

**FIFTH CLAIM**
**Violation of the Educational Opportunities Act of 1974**
**20 U.S.C. Section 1703**

158.     Plaintiffs incorporate by reference paragraphs 1 through 157 of this Complaint as though fully set forth herein.

159.    The Equal Education Opportunities Act of 1974, 20 U.S.C. Section 1703 ("EEOA"), provides no State shall deny equal educational opportunity to an individual on the basis of his race, color, national origin among or within schools…..."

160.    AUSD is a state actor, as well as an educational agency under the meaning of the EEOA.

161.    AUSD had violated the EEOA by denying the individual plaintiffs equal educational opportunity on account of his race by deliberately assigning him to a non-public school, inside of a public school, on a racially discriminatory basis.

162.    As a result of AUSD's actions, the plaintiffs have suffered and will continue to suffer from lack of appropriate educational services and a resulting loss of education and employment opportunities as well as trauma from physical and emotional abuse suffered in the segregated placement.

## SIXTH CLAIM

### Violation of Title II of the American with Disabilities Act

### 42 U.S.C.  Section 12131 et seq.

163.    Plaintiff hereby incorporate by reference paragraphs 1 through 162 of this Complaint as though fully set forth herein.

164.    Defendant Antioch Unified School District is a public entity subject to Title II of the ADA, 42 U.S.C. § 12131(1).

165.    J.T. is a person with disabilities covered by Title II of the ADA, and they are qualified to participate in the Defendant's services, programs, or activities.  42 U.S.C. §§ 12102, 12131(2).

166.    Plaintiffs allege that Defendant AUSD discriminated against J.T. and continues to discriminate against hundreds of African American public school students with behavior-related disabilities by unnecessarily segregating them, or by placing them at serious risk of such segregation, in a separate and unequal educational programs which are financed, operated, and administered by the Defendant District.  This segregation is unnecessary for the vast majority of students and, therefore, violates Title II of the Americans with Disabilities Act ("ADA"), which prohibits unnecessary segregation of persons with disabilities in District programs, services, and activities.  42 U.S.C. §§ 12131-34.  Such unjustified isolation and segregation of persons with

disabilities violates the ADA's mandate that public entities "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d); see also 42 U.S.C. § 12132; Olmstead v. L.C., 527 U.S. 581, 597 (1999).

167.    Mental health and therapeutic educational services and supports, such as Functional Behavioral Assessments, Behavioral Intervention Plans, and individualized positive behavioral supports, can be provided in integrated settings, including general education classrooms in students' zoned schools.  J.T. was educated in an integrated setting in San Francisco Unified but was immediately placed in an isolated, segregated program when he enrolled in AUSD, despite his not exhibiting any behavioral issues in the AUSD integrated general education setting.

168.    The majority of students remain in the AUSD's segregated programs are kept away from general education classrooms for years at a time while they receive such services.  The District had a policy that students. could not re-integrate into general education until a pre-set number of days without behaviors, however J.T. entered into the segregated program in March 2018, and could never have achieved the pre-set number of days as there were not sufficient school days available in the school calendar for him to satisfy the arbitrary number and further, the criteria was subjective and left to the determinations of the racially biased staff who didn't recognize that J.T. didn't exhibit any negative or mal-adaptive behaviors upon his entry into the class.

169.    The Defendant District discriminates against students with behavior-related disabilities in or at risk of placement in the segregated programs by denying them equal opportunity to access and benefit from the educational services available to students throughout the District who are not in the segregated classrooms and campuses.  Educational services and supports needed to help students succeed can be provided to students with behavior-related disabilities in integrated settings, including general education classrooms in students' zoned schools.

170.    AUSD denies students with disabilities the full opportunity to interact with their peers without disabilities, which can have a lasting impact on the students' future opportunities for academic achievement.

171.   Defendant has violated and continues to violate the ADA by administering its mental health and therapeutic educational service system in a manner that fails to serve students in its district in the most integrated setting appropriate to their needs and puts other students with disabilities at risk of unnecessary segregation.  The District further violates the ADA by failing to reasonably modify the District's policies, practices, and procedures to avoid such discrimination and unnecessary segregation.  42 U.S.C. § 12132.

172.   Defendant further violates the ADA by providing unequal educational opportunities to the African American disabled population, including J.T., and by failing to reasonably modify policies, practices, and procedures to avoid such discrimination.  28 C.F.R § 35.130(b)(1)(i)-(iii), (vii).

173.   Providing services to students with disabilities in or at risk of  suspension or placement in segregated programs and settings in more integrated settings can be accomplished through reasonable modifications to the District's programs and services.

174.   J.T. could benefit from mental health and therapeutic educational services and supports in integrated settings and does not oppose such placement.

175.   AUSD's actions constitute discrimination in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulations at 28 C.F.R. pt. 35.

176.   J.T. by and through his parent N.M. brings this lawsuit to vindicate the rights of the J.T. who was unnecessarily segregated in the District's segregated programs, and who remains at risk of such segregation, and to compel the District to administer its educational programs, services, and activities in a non-discriminatory manner.

177.   Issue a declaratory judgment that Defendant has violated Title II of the ADA by (1) failing to make reasonable modifications to its Programs to provide students with disabilities access to necessary mental health and therapeutic educational services and supports in the most integrated setting appropriate to their needs, and (2) providing students with disabilities services, programs, and benefits that are inferior and unequal to those provided to other students served in the general education environment.

//

## VI.                    PRAYER FOR RELIEF FOR ADMINISTRATIVE APPEAL

WHEREFORE, the Plaintiffs respectfully pray that this Court receive the records of the administrative proceedings and additional records after completion of discovery, based upon the foregoing, and after its consideration of the arguments of counsel, enter judgment in favor of Plaintiff as follows:

1. Monetary penalty or judgment against the District, for the District's failure to produce records.

2. Order the District to train its staff on identifying and referring students for assessments for mental health and IDEA related disabilities.

3. A Compensatory fund for student according to proof

4. Attorney fees and expenses according to proof.

5. Finding the District denied student a FAPE by:

6. Plaintiffs are requesting payment of fees and costs in the administrative case. As Plaintiff's counsel is also entitled to request compensation for time spent litigating fees, *N.S. v. Stratford Bd. Of Educ.* (D. Conn. 2000), Plaintiffs may update and augment its fee request.

7. For any relief that this Court deems just and proper.

## VII.                    PRAYER FOR RELIEF FOR CIVIL RIGHTS VIOLATIONS

WHEREFORE, the Plaintiffs respectfully pray that this Court for an ORDER DECLARING:

1. AUSD has violated the Equal Protection Clause of the Fourteenth Amendment, Title VI of the Civil Rights Act of 1964, the Equal Education Opportunities Act.

2. DOES 1-10 violated 42 U.S.C. Section 2000d *et seq.,*

3. Grant judgment in favor of J.T. on his Complaint and declare that Defendant has violated Title II of the ADA, 42 U.S.C. §§ 12131 et seq.

4. Ordering appropriate injunctive relief.

5. Order the District to fund educational therapy and counseling related to abuse and segregation of J.T. while in Antioch Unified School District.

6. Issue a declaratory judgment that Defendant has violated Title II of the ADA by (1) failing to make reasonable modifications to the segregated programs and classes to provide students with disabilities access to necessary mental health and therapeutic educational services and

*J.T., et al. v. Antioch USD, et al.*                    1ST AMENDED COMPLAINT

supports in the most integrated setting appropriate to their needs, and (2) providing with disabilities services, programs, and benefits that are inferior and unequal to those provided to other students served in the general education environment.

7. Enjoin Defendant to:      Provide appropriate, integrated mental health and therapeutic educational services and supports that are designed to allow students with behavior-related disabilities to be placed in integrated general education classroom settings, and access to equal educational opportunities, to those in or at serious risk of entering the segregated programs; and cease discriminating against those at serious risk of entering the segregated programs by failing to provide mental health and therapeutic educational services and supports in the most integrated setting appropriate to their needs.

8. Awarding Money damages in an amount to be determined at trial.

9. Awarding Plaintiffs' costs and attorneys' fees; and

10. Awarding all other relief as the Court may deem just and proper and in the interest of justice.

Dated:  October 19, 2018.

By:

Nicole Hodge Amey, State Bar No. 215157
Attorney for Plaintiffs
P.O. Box 5100
Oakland, CA  94605
Telephone:  (510) 569-3666
Facsimile:  (866) 602-2986
Email:  Hodgelaw@gmail.com

J.T., et al. v. Antioch USD, et al.                        1ST AMENDED COMPLAINT

**JURY DEMAND**

Pursuant to Federal Rules of Civil Procedure Rule 38.  Plaintiffs demand trial by Jury in all issues of this action so triable.