1  NICOLE HODGE AMEY (SBN 215157)
2  **LAW OFFICES OF NICOLE HODGE AMEY**
   P.O. BOX 5100
3  Oakland, California  94605
   Telephone:   (510) 479-0003
4  Facsimile:    (866) 602-2986
   E-mail:        hodgelaw@gmail.com
5
   Attorneys for Plaintiffs
6  J.T. a minor, by Parent and Guardian ad Litem, N.M.

7

8  LOUIS A. LEONE, ESQ. (SBN 099874)
   BRIAN A. DUUS, ESQ. (SBN 263403)
9  IOANA BURSON, ESQ. (SBN 209471)
   **LEONE & ALBERTS**
10 A Professional Corporation
   2175 N. California Blvd., Suite 900
11 Walnut Creek, CA  94596
   Telephone:   (925) 974-8600
12 Facsimile:    (925) 974-8601
13 E-mail:        lleone@leonealberts.com
                  bduus@leonealberts.com
14                iburson@leonealberts.com

15 Attorneys for Defendant
   ANTIOCH UNIFIED SCHOOL DISTRICT
16

17 MARK JOSEPH KENNEY (SBN 87345)
   ELIZABETH A. TRITTIPO (SBN 215622)
18 ELIZABETH HOLT ANDREWS (SBN 263206)
19 **SEVERSON & WERSON**
   A Professional Corporation
20 One Embarcadero Center, Suite 2600
   San Francisco, California  94111
21 Telephone:   (415) 398-3344
   Facsimile:    (415) 956-0439
22 E-mail:        mjk@severson.com
23                eat@severson.com
                  eha@severson.com
24
   Attorneys for Third Party Defendant
25 SPECTRUM CENTER, INC.

26

27

28

12925.0001/14977875.1
JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER                    CASE NO.: 3:18-CV-2992-EMC
1

# THE UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.T. a minor, by Parent and Guardian ad Litem N.M.,<br><br>          Plaintiffs,<br><br>     vs.<br><br>ANTIOCH UNION SCHOOL DISTRICT,<br><br>          Defendants. | Case No.:  3:18-cv-2992 EMC<br><br>**UPDATED JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER**<br><br>Date:       August 8, 2019<br>Time:       10:30 a.m.<br>Location: Courtroom 5<br><br>COMPLAINT FILED:  MAY 21, 2018 |
| ANTIOCH UNION SCHOOL DISTRICT,<br><br>          Third-Party Plaintiff,<br><br>     vs.<br><br>SPECTRUM CENTER, INC.,<br>PHILADELPHIA INDEMNITY INSURANCE COMPANY, and ROES 1 through 50,<br><br>          Third-Party Defendants. | |

The parties to the above-entitled action jointly submit this UPDATED JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER pursuant to the Civil Standing Order-General, U.S. District Judge Edward Chen, dated June 8, 2018, and the Standing Order for All Judges of the Northern District of California, dated June 8, 2018, and Civil Local Rule 16-9.

## 1. Jurisdiction & Service

On May 21, 2018, Plaintiff J.T., through his guardian ad litem N.M. ("Plaintiff"), filed a complaint in the United States District Court for the Northern District of California. On March 28, 2018 Defendant Antioch Unified School District ("the District") filed a Third-Party Complaint against Spectrum Center, Inc. ("Spectrum") and Philadelphia Indemnity Insurance Company

("Philadelphia").  All parties have appeared to date.  The District intends to file an amended third-party complaint.  No issues presently exist regarding jurisdiction or venue.

This Court has jurisdiction of Plaintiff's appeal of an administrative decision pursuant to 20 U.S.C. § 1415(i)(2)(A) and (3).  Plaintiff's causes of action arise under the Fourteenth Amendment of the United States Constitution; 42 U.S.C. § 1983; Title VI of the Civil Rights Acts of 1964, 42 U.S.C. §§ 2000d *et seq.;* Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 *et seq.*; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and the Equal Educational Opportunities Act of 1974, 20 U.S.C. § 1703.  The Court has subject matter jurisdiction over Plaintiff's federal claims under U.S.C. §§ 1331 and 1343. There are no issues regarding personal jurisdiction.

**2. Facts**

**Plaintiffs' Position:**

*Appeal of Special Education Decision*

J.T. is a minor child eligible for special education under the Individuals with Disabilities Education Act. J.T. was nine years old, when he enrolled in Antioch Unified School District on February 5, 2015, after moving from the city of San Francisco to Antioch.  J.T.'s was eligible under specific learning disability with a secondary eligible of speech and language impairment. Antioch Unified placed J.T. in a non-public school, which it located on a public school campus. Parent nor her counsel were aware that Antioch Unified had changed student's placement from general education to a restrictive non-public school setting.

N.M. filed a due process hearing alleging multiple district failures.  Hearing commenced on July 11, 2017 and in the opening statement of the District's attorney, on the first day of hearing, the District's counsel asserted for the first time that an IEP was held on March 2015 changing student's placement. The district's attorney stated the only copy of the IEP had been sent to San Francisco Unified and destroyed by San Francisco Unified.  The District did not present the defense in its written response to student's complaint and the Administrative Law Judge refused to allow student to call J.T.'s case manager from San Francisco Unified.  The judge refused to allow J.T. to produce evidence of the Special Education Information System

("SEIS") which showed the absence of a March 2015 IEP, as well as an absence of activity on student's SEIS file in March 2015.  Plaintiff contends the Administrative Law Judge erred when she did not allow student to go past the statute of limitations, due to the District withholding records and changing student's placement without written notice to parent, and in the absence of records showing an IEP was held, and in the absence of assessments that would allow a change of placement.  JT spent the greatest portion of his enrollment in the District.  The educational failures suffered by JT stem from the hidden placement change. Plaintiff seeks a reversal of the Order of the Administrative Law Judge and Attorney fees and Costs.

*Civil Rights Claims*

N.M. contends Antioch Unified School District violated J.T.'s civil rights based on his race and disability.

On February 10, 2015, within 5 days of J.T.'s enrollment in the District, an IEP was convened and the District sought to change J.T.'s placement from a general education setting to a more restrictive setting.  J.T.'s special education teacher from San Francisco Unified School District personally came to the meeting to ensure J.T. remained on track.  At the IEP meeting the District did not identify Spectrum as a possible placement, the District referred to Kimball which parent learned at hearing was a school where Spectrum had a site within the public school.

Spectrum is a program that serves children with behavior problems who cannot be educated in general education settings.  J.T. was not assessed prior to the district unilaterally changing his placement, he had not received any disciplinary notes indicating he had behaviors disruptive to his education or the education of his peers.

Antioch placed J.T. in Spectrum, and the teachers there did not notate any disruptive behaviors but used physical force and restraint upon him, did not comply with his IEP, segregated him from non-disabled students and forced him to witness his classmates be physically restrained and assaulted by staff.

JT's mother placed him in Antioch Unified when she moved from San Francisco to escape domestic violence.  JT was then subjected to physical violence of his own person and

forced to witness his peers abuse.  He suffered mental distress and began refusing to attend school.  J.T.'s mother returned to San Francisco to remove JT from the school abuse and she was immediately kidnapped, held and beaten by individuals who wanted to prevent her from testifying against her abuser.  N.M. went into hiding and when her abuser was incarcerated, she contacted her attorney to proceed with due process against Antioch Unified School District.

Antioch Unified discriminated against JT on the basis of his race and disability, as the district was seeking to reduce its suspension numbers and decided to place JT in a setting where students were not suspended but were abused.

**The District's Position:**

The ALJ correctly ruled that the statute of limitations barred essentially all of Plaintiffs' special education claims.  The ALJ also made extensive factual findings that would have supported a substantive finding in favor of the District as well on these special education claims.  The District's position is that the ALJ's Decision was correctly made and should be affirmed in its entirety.

The District is not contesting the one adverse finding against it, namely, that the District failed to include Plaintiff J.T.'s special education teacher at the July 14, 2015, IEP meeting, which denied him a FAPE.  The remedial relief ordered by the ALJ for this violation, which was to provide one-hour district-wide training for its entire special education staff on required IEP meeting procedures, has already been accomplished.

It is important to emphasize that this matter underwent nine days of administrative hearings, and thereafter the ALJ found against Plaintiffs on all of the material issues.  For example, as to Plaintiff's key claim that she did not know or agree to Plaintiff J.T.'s placement in the collaborative special education classroom at Kimball Elementary School within Spectrum, the ALJ expressly found this claim to be unsupported.  The ALJ actually found that Plaintiff N.M. had toured the classroom, knew what it was, knew what kind of services were to be provided and in what setting, and consented to the placement pursuant to the IEP.

///

1    As to Plaintiffs' discrimination and related civil rights claims, the District denies that

2    there is any substance to these claims.  It is noteworthy that Plaintiffs did not raise them during

3    the administrative hearing; these claims surfaced only after Plaintiffs received the adverse ALJ

4    Decision.  Plaintiff J.T. was not "warehoused" because he was African-American as Plaintiffs

5    erroneously alleged in the Complaint.  Rather, four IEP meetings were convened on Plaintiff

6    J.T.'s behalf in the short time that he was enrolled in the District (about six months) and

7    Plaintiff J.T.'s placement was made based on what was assessed to be in his best interest,

8    with the agreement at the time of his mother Plaintiff N.M.

9    With respect to the third-party claims against Spectrum and Philadelphia, the District

10   contends that both Spectrum and Philadelphia have a duty to defend the District against the

11   allegations contained in Plaintiff's Complaint due to allegations by Plaintiff that he was verbally

12   and physically abused by Spectrum staff while attending school.

13   **Third-Party Defendant Spectrum's Position:**

14   The indemnity provision in the District's standard form Agreement does not obligate

15   Spectrum to defend and indemnify the District in this case.  The present dispute concerns

16   whether the District provided Plaintiff with a Free and Appropriate Public Education ("FAPE")

17   as required by the Individuals with Disabilities Act ("IDEA").  The District contends that

18   Spectrum has a duty to defend and indemnify it with respect to Plaintiff's Complaint pursuant to

19   an indemnity provision in its standard form "AUSD Vendor Services Agreement" dated August

20   1, 2014 ("Agreement") which applies to claims for personal or bodily injury and property

21   damage.

22   On May 16, 2017, Plaintiff filed a request for a due process hearing in which he alleged

23   that the District denied him a FAPE during the 2014-2015 school year by failing to deliver and

24   implement services according to his individualized education program ("IEP").  Administrative

25   Law Judge Rita Defillippis ("the ALJ") issued a 32-page decision that did not contain a single

26   mention of physical abuse.

27   On October 19, 2018, Plaintiff filed the operative First Amended Complaint appealing

28   the ALJ's decision. Spectrum was not and is not named as a defendant. Plaintiff seeks a

1  finding that he was substantially and procedurally denied a FAPE.  (FAC at ¶20).  To support

2  this contention, Plaintiff alleges in part that he witnessed and was subject to physical abuse,

3  physical restraint, verbal put downs and a denial of education and academic instruction while

4  at Spectrum. (FAC ¶¶63, 79).  Plaintiff does not allege that he suffered bodily injury while at

5  Spectrum, and does not seek damages for bodily injury, such as medical expenses or

6  damages for pain and suffering.  Plaintiff does not allege that the District is vicariously liable for

7  Spectrum's actions.

8        The District contends that Spectrum is obligated to defend and indemnify it in the

9  present action pursuant to the indemnity provision in the Agreement the District drafted.  The

10 District misconstrues the language of the indemnity provision and applies the wrong standard.

11 The language of the provision does not include a duty to defend suits or administrative

12 proceedings alleging the failure to provide a FAPE under IDEA.  The clause "regardless of and

13 however caused that may arise for any reason" cannot be reasonably construed to include

14 IDEA proceedings when the prior clause limited Spectrum's defense obligation to suits alleging

15 personal or bodily injury and property damage.  Had the District intended to obligate Spectrum

16 or any other "VENDOR" to defend and indemnify it in IDEA lawsuits and administrative

17 proceedings, it should have put a clause specifying such in its standard form agreement, or put

18 a modified indemnity provision in Exhibit A which addresses Spectrum's scope of work.

19       If ambiguous, the provision must be strictly construed against the District because the

20 District prepared the Agreement and had superior bargaining power.  The Agreement must

21 also be interpreted to give effect to the mutual intention of the parties.  Spectrum never

22 contemplated that the indemnity agreement, which applies to personal or bodily injuries and

23 property damage, would extend to claims for the District's failure to comply with the IDEA.  The

24 ruling on Philadelphia's motion to dismiss does not compel a different result because the rules

25 of interpretation applicable to insurance policies do not apply to contractual indemnity

26 agreements. Insurance policies are broadly construed in favor of the insured, whereas

27 contractual indemnity provision are construed narrowly against the drafter.

28 ///

**Philadelphia's Position:**

Currently, the only claim against Philadelphia is a breach of contract claim by the District.  Philadelphia maintains the District's claim is without merit because based on the pleadings and facts known, the Philadelphia policy at issue does not cover the underlying claims against the District.  The underlying complaint alleges plaintiff J.T. suffered injury while attending school. Such injuries fall within the policy's professional services exclusion and are not covered under the policy.

   3. <u>Legal Issues</u>

**Plaintiff's Position:**

a.      Student seeks a reversal of the decision of the Administrative Decision, due to the clear errors and Administrative Law Judge misunderstanding of the Individuals with Disabilities Education Act ("IDEA").  Plaintiff seeks attorney fees as the "prevailing party" under the IDEA and injunctive, and declaratory relief requiring the District to cease its discriminatory practices, and require all staff be trained in tailoring IEP's to the needs of each student, without regard to the programs offered by the District and all actual losses incurred Plaintiff due to the Discrimination of the District.

**The District's Position:**

a.      Whether the ALJ's well-reasoned, supported and lengthy opinion is entitled to deference in respect to Plaintiffs' IDEA claims, and should be affirmed.

b.      Whether the District discriminated against Plaintiffs based upon their race, African-American, or based upon Plaintiff J.T.'s disability.

c.      Whether the District is entitled to defense and indemnity in this matter from Spectrum and its insurance carrier Philadelphia.

**Spectrum's Position:**

As to the Third-Party Complaint, the only issue is whether the indemnity provision in the District's standard form Agreement obligates Spectrum to defend and indemnify it in the present dispute concerning the District's failure to provide a FAPE under IDEA.

///

**Philadelphia's Position:**

Philadelphia seeks a determination that the Philadelphia policy does not cover the underlying claims against the District. Philadelphia reserves the right to determine this issue by arbitration.

### 4. Motions

#### a. Pending Motions

None currently.

#### b. Proposed Motions

##### i. Plaintiffs' Motion for Judgment on their IDEA Appeal and Cross Motion for Summary Judgment on Plaintiff's Civil Rights Claims.

The parties agree that Plaintiffs' IDEA appeal should be decided upon motion for judgment as from an appeal from an administrative record. See, e.g., *Capistrano Unified School Dist. v. Wartenberg* (9th Cir. 1994) 59 F.3d 884, 892).

The parties propose that Plaintiffs file a motion for judgment seeking to overturn the ALJ's Decision, with the District filing an opposition asserting that the decision should be affirmed, and then with Plaintiffs' filing a reply brief. The court will then enter judgment on the IDEA appeal.

##### ii. The District's Proposed Motion for Summary Judgment as to Plaintiffs' Civil Rights Claims.

The parties agree that following the hearing and decision on the IDEA appeal, then the District should be given the opportunity to bring a motion for summary judgment as to Plaintiffs' discrimination and related civil rights claims. The District's position is that should the ALJ's Decision be affirmed, then that may in and of itself preclude some or all of Plaintiffs' claims because of their failure to raise them during the nine days of the administrative hearing, and failure to overturn the ALJ's Decision. See, e.g., *Mir v. Little Co. of Mary Hosp. (*9th Cir. 1988) 844 F.2d 646, 650-51 (holding physician's civil rights claims barred by failure to overturn adverse administrative decision). See also *Takahashi v. Board of Trustees* (9th Cir. 1986) 783

1  F.2d 848, 851 (holding teacher's civil rights claims barred by failure to overturn adverse

2  administrative decision).

3       Regardless of the outcome of the IDEA appeal, however, it is the District's position that

4  Plaintiffs will not have sufficient admissible evidence to withstand a motion for summary

5  judgment as to Plaintiffs' discrimination and related civil rights claims.

6          **iii.  The District's Proposed Motion for Partial Summary Judgment as to**

7           **Spectrum and Philadelphia's Duty to Defend.**

8       The District should be given the opportunity to bring a motion for partial summary

9  judgment as to its claims for breach of duty to defend against Spectrum and Philadelphia

10  against the allegations of Plaintiffs' Complaint.  The District's position is that both Spectrum

11  and Philadelphia should defend the District because JT alleges he suffered physical and

12  emotional abuse while receiving instruction at Spectrum. (¶¶63, 79.)  The Services Agreement

13  between the District and Spectrum provides for a defense against "all costs, losses, claims,

14  demands, suits, actions, payments, liabilities and judgments, including attorneys' fees, arising

15  from personal or bodily injuries, property damage or otherwise, ***regardless of and however***

16  ***caused that may arise for any reason from [Spectrum]'s performance of [the]***

17  ***Agreement***." (Emphasis added.)

18       Philadelphia's policies of insurance classify the District as an additional insured so long

19  as it is being subject to liability for injury "caused in whole or in part by [Spectrum's] acts or

20  omissions."  JT's allegations are that he was abused physically and mentally by Spectrum's

21  staff.  These allegations trigger the duty to defend by Philadelphia and Spectrum because

22  there is a "potential" or "possibility" for coverage.  *Montrose Chem. Corp. v. Superior Court*, 6

23  Cal.4th 287, 300 (1993).  To date, neither Philadelphia, nor Spectrum, agreed to defend the

24  District.

25  ///

26  ///

27  ///

28  ///

iv. **Philadelphia's Proposed Motion for Summary Judgment as to the District's Breach of Contract Claim.**

Philadelphia should be given the opportunity to bring a motion for summary judgment as to the District's breach of contract claim against Philadelphia because the District cannot show the underlying allegations against the District fall outside the professional services exclusion.

vi. **Spectrum's Motion for Summary Judgment.**

Spectrum anticipates filing a motion for summary judgment as to whether the indemnity provision in the Agreement between Spectrum and the District creates a duty on Spectrum's part to defend or indemnify the District in the present action.

**5. Amendment of Pleadings**

**Plaintiffs' Position**:

Plaintiff JT seeks a reversal of the decision of the Administrative Law Judge, due to the clear errors and misunderstanding of the Individuals with Disabilities Act ("IDEA").

Plaintiff JT seeks injunctive, and declaratory relief requiring the District to cease its discriminatory practice of placing disabled students of African American Slave descent- namely JT—into segregated settings and to serve those students in general education settings. Further during hearing the District witnesses testified that the District did not provide the amount of special education settings included in JT's IEP in general education.  Plaintiff requests the District staff be trained on their duty to tailor IEP's to the needs of the student, instead of its current practice of tailoring IEPs to the district's existing services.

Plaintiff seeks attorney fees as the prevailing party.

**The District's Position:**

The District may amend its claim for breach of covenant of good faith and fair dealing against Philadelphia.

**Spectrum's Position:**

Spectrum does not intend to file an amended pleading at this time.

///

///

1    **6.  Evidence Preservation**

2         Each party requests that the other preserve all relevant e-mails and other electronically-

3 stored data, including cell phone text messages and social networking materials, pursuant to

4 the Federal Rules of Civil Procedure and applicable local rules.  The parties have met and

5 conferred on this issue, pursuant to the Court's ESI Guidelines, as to the appropriate scope of

6 such preservation and search.

7         The parties are attempting to reach agreement on the scope of ESI discovery.  Plaintiffs

8 have provided a broad list of search terms but have not specified what sources that they

9 wished to be searched.  The District's position is that many of the search terms are irrelevant.

10 The District's position is that Plaintiffs should identify specific email accounts of relevant

11 personnel that they wish to be searched along with relevant search terms in the hope that the

12 parties can reach an agreement as to the scope and conduct of an ESI search.

13    **7.  Disclosures**

14         In compliance with Fed. R. Civ. P. 26, Plaintiffs and the District have exchanged initial

15 disclosures.  Philadelphia has made its initial disclosures.  Spectrum anticipates making its

16 initial disclosures before the Case Management Conference.

17    **8.  Discovery**

18         The Court previously stayed discovery pending the outcome of the settlement

19 conference.

20         **Plaintiffs' Position**:

21         Plaintiff requires discovery for the purposes of his appeal of the Administrative Decision.

22 Plaintiff seeks admissions, documents and interrogatories as well as depositions of Persons

23 Most Knowledgeable and other staff.

24         JT seeks discovery on appeal as he was denied multiple documents, including a

25 purported March 2015 IEP the district alleged was written.  The record requires documents as

26 the District failed to give student notice of its defense prior to hearing, denying student an

27 opportunity to have necessary witnesses and records in evidence. The district produced

28 redacted emails during hearing with District staff communicating about the needs of child and

1  making disparaging comments about his mother. Plaintiff requires those documents and

2  evidence to support its appeal and civil rights claims. Further, Plaintiff alleges the District used

3  Spectrum non-public school to contain African American and disabled students to reduce its

4  suspension rates, documents are necessary for that claim.

5  **The District's Position:**

6  The District requests that the discovery stay remain in place pending completion of the

7  settlement conference if appropriate.  In the event that discovery is at some point commenced,

8  the District's position is that no discovery is necessary on the IDEA appeal, or whatever may

9  be allowed should be extremely limited, because of the extensive nature of the Administrative

10  Record (2400 pages), created after nine days of hearing including extensive testimony from

11  witnesses.

12  As to discovery in respect to Plaintiffs' discrimination claims, then the District would

13  require at least the depositions of Plaintiffs, as well as potentially Plaintiff J.T.'s treating health

14  care providers, if any.

15  The District would require discovery in respect to its claims for defense and indemnity

16  as to Spectrum NPS and Philadelphia.  The District would also require discovery with respect

17  to Philadelphia's claims handling practices so that it may amend its claim of bad faith against

18  Philadelphia.

19  **Philadelphia's Position:**

20  Philadelphia does not anticipate needing to conduct any discovery, assuming it is

21  provided a copy of the administrative record. If the District elects to re-allege its claim for

22  breach of the implied covenant of good faith and fair dealing, more extensive discovery may be

23  needed.

24  **Spectrum's Position**

25  Depending on the outcome of summary judgment motions filed by the District and/or

26  Spectrum, Spectrum may require discovery as to whether the District intended, at the time it

27  prepared the Agreement, that the indemnity provision would extend to administrative

28  proceedings and lawsuits alleging that the District failed to comply with the IDEA.

9. **Class Actions**

Not applicable.

10. **Related Cases**

Not applicable.

11. **Relief**

**Plaintiffs' Position:**

Plaintiff seeks declaratory, and injunctive relief and compensatory education and general damages, costs and attorney fees.

**The District's Position:**

The District contends Plaintiff is not entitled to any of the relief requested and denies all liability to Plaintiff.

The District seeks defense and indemnity from Spectrum NPS and Philadelphia.  The Court has denied Philadelphia's motion to dismiss or for judgment on the Pleadings and has ruled that "the *potential* of Spectrum's liability raised by J.T.'s complaint is sufficient to trigger Philadelphia's duty to defend for purposes of the instant motion to dismiss." (Emphasis in original, Order, at p. 5).  The Court also stated in its Order that "Philadelphia had a defense duty upon receipt of AUSD's tender." (Order at p. 3.)  To date, Philadelphia has not accepted the defense obligation and is contesting its duty to defend under the insurance policy.

The relationship between the District and Spectrum is governed by the parties' Services Agreement.  Under the agreement's indemnity provision, Spectrum has a duty to defend the District against any loss, suit, liability, action etc. that arises from personal or bodily injury "***regardless of and however caused that may arise for any reason***" in connection with Spectrum's performance of the agreement.  Here, J.T. alleges he was physically and emotionally abused by Spectrum staff while at Spectrum.  Hence, the duty to defend had been triggered under the parties' agreement.

///

///

///

**Philadelphia's Position:**

Philadelphia contends the District is not entitled to any of the relief requested against Philadelphia and denies all liability to the District. Further, Philadelphia notes that its relationship with Spectrum is separate from Spectrum's relationship with the District.

**Spectrum's Position**

Spectrum maintains that the indemnity provision in the Agreement does not obligate Spectrum to defend or indemnify the District with respect to OAH proceedings or lawsuits brought pursuant to IDEA, and that the District is not entitled to any of the relief sought against Spectrum.

Spectrum maintains that the indemnity provision can be interpreted as a matter of law and that discovery is not required to determine whether the language of that provision extends to the Complaint.

12. **Settlement and ADR**

This matter proceeded to an early settlement conference before Magistrate Judge Beeler, but no resolution was reached. Spectrum was in attendance, but Philadelphia was not. Judge Beeler left the settlement conference open and stated she is willing to revisit the matter now that Spectrum and Philadelphia appeared in the lawsuit.

13. **Consent to Magistrate Judge for All Purposes**

The parties have not consented to Magistrate Judge jurisdiction.

14. **Other References**

The parties do not believe this case is suitable for other references, with the exception of the reference to Magistrate Judge Beeler for ADR purposes.

15. **Narrowing of Issues**

The parties have not stipulated to the narrowing of any issues. This may be possible after the Court's ruling on the IDEA appeal or after the parties have an opportunity to conduct discovery.

///

///

**16. Expedited Trial Procedure**

The parties propose that Plaintiffs file their motion for judgment on the IDEA appeal with hearing to be held approximately 60 days after the conclusion of the parties' Early Settlement Conference.

**17. Scheduling**

The parties propose the following dates and will come prepared to discuss further specific dates at the time of the CMC.

| Activity | Proposed Date |
|---|---|
| 1.  Initial Disclosures | Done |
| 2.  Early Settlement Conference | To be continued if appropriate |
| 3.  Plaintiffs' motion for judgment on the IDEA appeal | To be filed 45 days after completion of Plaintiff J.T.'s discovery and discovery motions |
| 4.  The District's opposition | 35 days after Plaintiffs' motion |
| 5.  Plaintiffs' reply brief | 21 days after the opposition |
| 6.  Hearing on motion re Plaintiffs | 30-45 days after Plaintiffs' motion |
| 7.  District/Spectrum's motion for partial summary judgment | To be filed 45 days after completion of Plaintiff's Discovery and any discovery motions |
| 8.  Opposition | 35 days after the District's motion |
| 9.  Reply brief | 21 days after the opposition |
| 10. Hearing on motion re Spectrum | 30-45 days after the District's motion |

**Philadelphia's Position**:

In addition to the proposals above, if the Court intends to resolve the IDEA claims first, the Court should set the case for a further case management conference after resolution of the IDEA claims, to set the case management schedule for Plaintiffs' remaining claims and the District's third party claims.

///

///

18. **Trial**

The parties believe that the trial of Plaintiffs' non-IDEA claims will take approximately seven days.

The parties believe that the District's insurance and contractual indemnity claims can be resolved by summary judgment.  If the claims are not resolved by summary judgment, the parties anticipate trial will take approximately 6 day(s).

19. **Disclosure of Non-party Interested Entities or Persons**

Pursuant to Civil Local Rule 3-15, the undersigned certify that as of this date, other than the named parties, there is no such interest to report.

20. **Other-Administrative Record**

Plaintiffs have obtained a copy of the Administrative Record in this case (which Plaintiffs have provided the District), which is approximately 2400 pages.  It is in electronic format and can readily be provided as such.  The parties request the Court's instruction on how to file it with the Court.

Dated:  August 1, 2019                    **THE LAW OFFICES OF NICOLE HODGE AMEY**


                                          /s/ Nicole Hodge Amey
                                          NICOLE HODGE AMEY, ESQ.
                                          Attorney for Plaintiffs N.M. and J.T.


Dated:  August 1, 2019                    **LEONE & ALBERTS**
                                          /s/ Ioana Burson
                                          IOANA BURSON, ESQ.
                                          Attorneys for Defendant
                                          ANTIOCH UNIFIED SCHOOL DISTRICT


Dated:  August 1, 2019                    **NIELSEN HALEY & ABBOTT LLP**


                                          /s/ James C. Nielsen
                                          JAMES C. NIELSEN
                                          Attorneys for Defendant
                                          PHILADELPHIA INDEMNITY INSURANCE COMPANY

Dated:  August 1, 2019                **SEVERSON & WERSON**


/s/ Elizabeth A. Trittipo
ELIZABETH A. TRITTIPO, ESQ.
Attorneys for Third-Party Defendant
SPECTRUM CENTER, INC.

1

## CASE MANAGEMENT ORDER

2    The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is

3  approved as the Case Management Order for this case and all parties shall comply with its

4  provisions.

5

6    **IT IS SO ORDERED.**

7

8  Dated: _____

9                                    EDWARD M. CHEN
                                       UNITED STATES DISTRICT COURT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28